UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Allen Rheaume,

      Petitioner,

      v.                                  Civil Action No. 1:13-CV-67

Andrew Pallito,

      Respondent.

## REPORT AND RECOMMENDATION
(Docs. 3, 4, 6)

Petitioner Allen Rheaume is a state prisoner proceeding without counsel with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 3.) Rheaume challenges the state court's revocation of his probation, arguing that the testimony presented by his probation officer during the revocation hearing was inaccurate and that he was denied the effective assistance of counsel during the hearing. In addition to his Petition, Rheaume has filed a Motion for Summary Judgment. (Doc. 4.) Respondent opposes the Petition and has filed a Motion to Dismiss. (Doc. 6.)

For the reasons that follow, I recommend the Petition be DENIED, Rheaume's Motion for Summary Judgment be DENIED, and Respondent's Motion to Dismiss be GRANTED.

## Factual and Procedural Background

### I.     The Probation Revocation

The underlying facts have been summarized by the Vermont Supreme Court:

> In June 2004, defendant pled guilty to charges of lewd and lascivious conduct and being a habitual offender.  Pursuant to the plea agreement, he was sentenced to fifty-five days to life imprisonment, all suspended except for fifty-five days to five years (later amended to fifty-five days to two years).  Defendant admitted probation violations in August 2006 and May 2007, after which he served portions of his sentence before being released again on probation.  In August 2007, two months after his most recent release from prison, defendant's probation officer filed another information citing probation violations.  Following a hearing that was delayed to obtain a competency report, the trial court found defendant guilty of violating two probation conditions—that he not use non-prescription drugs (in this case, marijuana) and that he participate in counseling as directed by his probation officer.  Concluding that probation was not working for defendant, the court imposed the underlying sentence with the understanding that defendant would be considered for furlough and conditional release.

*State v. Rheaume*, No. 2010-156, slip op. at 1 (Vt. Dec. 8, 2010) (unpub. mem.) (Doc. 3-2).

The two probation conditions at issue are conditions K and L:

> K.     If the probation officer or the court orders you to go to any counseling or training program, you must do so.  You must participate to the satisfaction of your probation officer.
> L.     You must not buy, have or use any regulated drugs unless they are prescribed by a doctor.  Your probation officer or any other person authorized by your probation officer can require you to have random urinalysis testing.

(Doc. 3-5 at 1.)  In the probation violation complaint, dated August 10, 2007, Rheaume's probation officer, Jerri Brouillette, cited violations of both conditions as the grounds for revocation.  (Doc. 3-6.)  The same day, on the basis of the allegations in the complaint,

Rheaume was charged with a violation of probation and held without bail.  The revocation hearing was held on January 30, 2008.  (Doc. 3-22.)

The only testimony at the hearing was that of Rheaume's probation officer, Brouillette.  Brouillette testified that, on July 17, 2007, Rheaume admitted to her that he had recently used marijuana and, after two negative tests in the interim, tested positive for marijuana on August 10, 2007.  (Doc. 3-22 at 10.)  Brouillette further testified that she had communicated with Rheaume's substance abuse counselor, David Porter, who informed her that Rheaume had missed recent counseling appointments on July 17 and July 24, and that, as a result, Porter was no longer willing to meet with Rheaume.  (*Id*. at 11-13.)  By Brouillette's description, Rheaume's participation in counseling with Porter was a condition of his probation.  (*Id*. at 12.)  In light of the positive drug tests and failure to attend counseling, Brouillette concluded that "at that point in time, [Rheaume] really appeared to be slipping, and we cited him, and—and felt like probation wasn't working.  In the last year or so, he had been in and out of jail several times because he couldn't stay clean."  (*Id*. at 13.)  Brouillette also recounted "three or four" past probation violations "for the same reasons."  (*Id*. at 14.)

On cross-examination, Rheaume's attorney, Daniel Maguire, asked Brouillette about Department of Corrections (DOC) drug-testing policies applicable to Rheaume as a probationer.  Chiefly, Maguire inquired whether it was appropriate for Brouillette to penalize Rheaume for admitting to marijuana use on July 17 when the drug test administered on that date (which was negative) was intended to serve treatment purposes rather than punitive purposes.  Maguire suggested that Brouillette had "treated [the July

17 test] as a positive" and "ordered [Rheaume] to do certain things" solely on the basis of his admission, which she could not have done on the basis of a positive treatment test. (*Id*. at 25.) In response to Maguire's questioning, Brouillette emphasized the distinction between Rheaume's admission and the results of a drug test (*id*. at 21), as well as the fact that the policy cited by Maguire—which distinguished between "treatment" tests and "suspicion" tests—did not apply to probationers (*id*. at 15-17).

On the basis of Rheaume's admission, Brouillette had required him to address the drug use with David Porter and to make sure he attended at least three self-help groups per week. (*Id*. at 21.) When Maguire asked Brouillette how she had informed Rheaume of these requirements, Brouillette responded that she had written "out what he needed to do on a sticky," while conceding that more formal notice might have been a "better practice." (*Id*. at 22.) Brouillette disputed Maguire's characterization of these requirements as a "sanction," instead describing them as "motivational interviewing and trying to address a treatment issue." (*Id*. at 22-23.) Finally, Maguire asked Brouillette if the drug testing performed on August 10, 2007, which resulted in a positive test, had required the approval of her supervisor. (*Id*. at 29.) Brouillette responded that, pursuant to DOC policy, she was the supervising probation officer, and thus she did not need to get "any supervisory approval" for the August 10 test. (*Id*.)

At the conclusion of Brouillette's testimony, after brief argument from counsel, the judge found that Rheaume had been "using marijuana at the time he was under supervision" and that "he did miss these appointments," in violation of the two conditions of his probation. (*Id*. at 33.) Accordingly, as stated above, the judge revoked Rheaume's

probation and imposed the underlying sentence of fifty-five days to life imprisonment, noting that Rheaume would "be considered for a furlough and conditional release." (*Id.* at 41.)  Additional facts are set forth as necessary in the discussion below.

## II.     Direct Appeal

Rheaume, represented by counsel, appealed the revocation decision to the Vermont Supreme Court.  As a matter of Vermont law, a trial court cannot revoke probation unless it finds: (1) that "[c]onfinement is necessary to protect the community from further criminal activity by the probationer"; or (2) that "[t]he probationer is in need of correctional treatment which can most effectively be provided if he or she is confined"; or (3) that it "would unduly depreciate the seriousness of the violation if probation were not revoked."  28 V.S.A. § 303(b).  On appeal, counsel argued that the court had abused its discretion in revoking probation, while Rheaume filed a *pro se* supplemental brief arguing that Brouillette had committed perjury during her testimony at the revocation hearing.

A three-justice panel of the Vermont Supreme Court affirmed the revocation. *State v. Rheaume*, No. 2010-156, 2010 WL 7789280 (Vt. Dec. 8, 2010); (Doc. 3-2).  The Court found that Rheaume had not challenged the probation violations themselves, but rather the court's decision to revoke his probation on the basis of those violations.  The challenged decision to revoke, however, was well-supported by the record.  The Vermont Supreme Court concluded that "the evidence demonstrated that defendant would continue his 'criminal activity' [drug use] unless probation was revoked, and that this criminal activity affected his ability to participate in sex offender programming to address the

underlying offense." *Id.* at 2.  Turning to Rheaume's allegation of perjury, the Vermont

Supreme Court rejected Rheaume's supplemental claim of error because it was not raised

in the lower court and such credibility determinations "are within the province of the trial

court." *Id.*  As such, the Court found "no basis for reversal with respect to these claims."

*Id.*[1]

## III.   Rheaume's First Habeas Petition

On February 16, 2011, Rheaume filed his first petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In that petition, Rheaume again challenged Brouillette's

credibility as well as the validity of her conclusions as to the conduct of his probation

supervision.  Specifically, he maintained: (1) that Brouillette should not have sanctioned

him for his admission to drug use on July 17, 2007 because the drug test administered on

that date was a "treatment" test as a matter of DOC policy; (2) that his August 10, 2007

drug test was improper because it was unapproved by a DOC supervisor, contrary to

DOC policy; (3) that his substance abuse counseling was not a mandated condition of his

probation; and (4) that any of Brouillette's testimony to the contrary was perjurious.

In a Report and Recommendation dated August 1, 2011, I recommended that

Rheaume's petition be dismissed.  *See Rheaume v. Pallito*, Civil Action No. 2:11-CV-38,

2011 WL 3654423 (D. Vt. Aug. 1, 2011).  As recounted in that recommendation, the

Anti-Terrorism and Effective Death Penalty Act (AEDPA) requires that, prior to bringing

a petition for habeas corpus relief in federal court, a petitioner must exhaust the remedies

available to him in state court.  *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808

---

[1]  Rheaume later moved for reargument, which was denied.  (Doc. 3-4.)

(2d Cir. 2000); 28 U.S.C. § 2254(b)(1). To meet this requirement, the petitioner must "fairly present" both the factual and legal underpinnings of his federal claim to the state's highest court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003). In this case, Rheaume presented what is termed a "mixed petition"—some of his claims were unexhausted and others were not. For example, Rheaume had undoubtedly pressed his perjury claim to the Vermont Supreme Court on direct appeal, but had not raised his allegations concerning Brouillette's failure to adhere to DOC policies and procedures or provide adequate notice that substance abuse counseling was a required condition of his probation. In recommending dismissal of the mixed petition, I noted that Rheaume had ample time under the one-year limitations period set forth at 28 U.S.C. § 2241(d)(1) to return to state court and exhaust his remedies there, and thus declined to stay the proceeding and hold it in abeyance until all claims were exhausted as contemplated in *Rhines v. Weber*, 544 U.S. 269 (2005).

The district court adopted my recommendation, and the petition was dismissed. *Rheaume v. Pallito*, No. 2:11 CV 38, 2011 WL 3629203 (D. Vt. Aug. 17, 2011).

**IV.     Rheaume's Post-Conviction Relief Petition in State Court**

Later that month, on August 30, 2011, consistent with this Court's directive to return to state court, Rheaume filed a petition for post-conviction relief (PCR) in Vermont Superior Court. In his PCR petition, Rheaume raised the same claims as in his federal habeas petition. Rheaume alleged ineffective assistance of counsel at his January 2008 revocation hearing, asserting several prejudicial failings by defense counsel. Specifically, Rheaume claimed that his counsel was ineffective for: (1) failing to object to

the court's consideration of his July 17, 2007 admission to marijuana use; (2) refusing to challenge or object to the admission of the August 10, 2007 test results on the basis of Brouillette's failure to procure supervisory permission for the test; (3) failing to object that the counseling sessions with Porter were not required under his probation conditions; and (4) failing to challenge false statements and perjury by Brouillette.  In a supplemental filing, Rheaume also argued that the results of the August 10, 2007 drug test were inadmissible because Brouillette did not have reasonable suspicion to administer the test. Finally, at the merits hearing, Rheaume raised one additional allegation of error: that his conditions of probation did not authorize the August drug test because those conditions only required him to submit to "random" testing, not testing based on suspicion.

The parties filed cross-motions for summary judgment and, after a hearing, the Vermont Superior Court rejected all of Rheaume's claims and granted summary judgment in favor of the State.  (Doc. 3-1.)  In essence, the court concluded that counsel's performance was not deficient because each piece of evidence in question was admissible, and thus there was no viable ground on which counsel could have objected. On appeal, a three-justice panel of the Vermont Supreme Court agreed, and thus affirmed the grant of summary judgment for the State.  *In re Rheaume*, No. 2012-354, 2013 WL 2631318 (Vt. Apr. 18, 2013) (unpub. mem.).

**V.      The Instant Habeas Petition**

Rheaume then returned to this Court, filing a second Petition for a Writ of Habeas Corpus on May 2, 2013, raising the same issues as presented in his original, previously-dismissed petition.  (Doc. 3.)  Again, Rheaume now claims that counsel was ineffective for: (1) failing to challenge Brouillette's testimony regarding his July 17, 2007 admission to marijuana use, which could not permissibly form the basis of a sanction consistent with DOC policy, because the test administered on that date was for treatment purposes only; (2) failing to object to the introduction of the results of the August 10, 2007 drug test because that test was neither supported by reasonable suspicion nor approved by a supervisor; (3) failing to object to the testimony concerning his missed appointments with Porter, which he contends were voluntary and were not a condition of his probation; and (4) failing to object to the false contents of the probation violation complaint and Brouillette's perjured testimony.  (Doc. 3 at 5-9.)  Eight days after filing his Petition, Rheaume filed a Motion for Summary Judgment.  (Doc. 4.)

Respondent opposes the Petition on the basis that "[t]here should be no need for any additional hearing on this petition [because] all the evidence and arguments have been made in the State court already."  (Doc. 6 at 3.)  Respondent has also filed a Motion to Dismiss.  (Doc. 6.)

Of course, contrary to Respondent's argument, the fact that Rheaume's claims have already been heard in state court is not a reason to deny his Petition.  Indeed, I previously recommended dismissal on the basis that his claims had *not* been heard in state court, and were thus unexhausted.  Rheaume having returned to the Vermont

Supreme Court to exhaust his state-court remedies, the matter is now ripe for disposition on the merits.

## Discussion

Rheaume's habeas petition is governed by AEDPA, 28 U.S.C. § 2254. "AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the *habeas* petitions of state prisoners.'" *Eze v. Senkowski*, 321 F.3d 110, 120 (2d Cir. 2003) (quoting *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001)). Pursuant to § 2254(d), a court may only grant a writ of habeas corpus if one of two conditions is satisfied: "the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (quoting 28 U.S.C. § 2254(d)(1)). In effect, this means that federal courts "must give the state court's adjudication a high degree of deference." *Yung v. Walker*, 341 F.3d 104, 109 (2d Cir. 2002) (citing *Brown v. Artuz*, 283 F.3d 492, 497 (2d Cir. 2002)).

In his § 2254 petition, Rheaume claims that his attorney was constitutionally ineffective at his probation revocation hearing for the variety of reasons outlined above. The essence of such a Sixth Amendment ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the proceeding was rendered unfair and the verdict tainted with suspicion. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Thus, to succeed on a claim of

ineffective assistance of counsel a habeas petitioner must show that (1) his counsel's performance was objectively deficient, and (2) he was actually prejudiced by counsel's deficient performance.  *See Strickland v. Washington*, 466 U.S. 668, 688, 692-93 (1984); *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011).  As relevant here, the right to effective counsel applies at probation revocation hearings.  *See United States v. Smith*, 982 F.2d 757, 762 (2d Cir. 1992); *see also* Fed. R. Crim. P. 32.1; *Black v. Romano*, 471 U.S. 606, 612 (1985) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)).  The burden is on the petitioner to establish both prongs of an ineffective-assistance claim.  *See Byrd v. Evans*, 420 F. App'x 28, 30 (2d Cir. 2011) (citing *Kimmelman*, 477 U.S. at 381).  This *Strickland* standard "is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

Although Rheaume's claims concerning the errors of counsel are grounded in DOC regulations and other issues of state law, review of his claims under AEDPA is still appropriate given the federal nature of his underlying ineffective-assistance claim.  "It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Williams v. Taylor*, 529 U.S. 362, 391 (2000).  "The *Williams* Court thus clarified that for AEDPA purposes, it matters only that the *Strickland* performance and prejudice test has been 'clearly established'—not that a particular theory of ineffective assistance derived from *Strickland* has been clearly established."  *Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).  Thus, the fact that Rheaume raises chiefly questions of state law in support of his

11

ineffective-assistance claim does not negate the overridingly federal basis of his cause of action, grounded as it is in a claim of ineffective assistance under *Strickland*.

As to the first prong of the *Strickland* analysis, an attorney's representation is objectively deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Morales*, 635 F.3d at 43. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id*. (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). The Second Circuit recognizes that "[d]ecisions by criminal defense counsel are often choices among bad alternatives that are only rarely shown to" meet the *Strickland* standard; such claims are, "quite often[,] the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' and can be quickly resolved." *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010).

In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments,'" *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691), and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" under the Sixth Amendment. *Palacios v. Burge*, 589

12

F.3d 556, 561 (2d Cir. 2009) (internal quotation marks omitted).  For example, "[a] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id*. at 588 (quoting *Strickland*, 466 U.S. at 690).  Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id*.

As to the second *Strickland* prong, counsel's performance is prejudicial when it "undermine[s] confidence in the outcome" of the proceeding such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *see Morales*, 635 F.3d at 43.  "Unlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'"  *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).  "If the evidence of a defendant's guilt is strong, the second prong of the *Strickland* test is not easily satisfied as it is less likely that trial counsel's performance materially affected the outcome."  *United States v. Delarosa*, No. 1:09-CR-64-20, 2012 WL 3778855, at *5 (D. Vt. Aug. 30, 2012) (citing *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991)).

Where a state habeas petitioner brings a claim of ineffective assistance, as Rheaume does, the case is viewed through the lens of both AEDPA and *Strickland*, and therefore, as noted above, the court's review is deferential. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal quotations omitted). As a consequence, when reviewing a claim of ineffective assistance under AEDPA's standard of review, "the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Id.* (emphasis added). So, here, Rheaume "must show that the [Vermont Supreme Court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

This he cannot do. There is no basis to conclude that counsel's conduct was in any way deficient. As such, I need not address the issue of prejudice. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one.").[2]

First, Rheaume argues that counsel was ineffective for failing to challenge Brouillette's testimony regarding his July 17, 2007 admission to marijuana use. According to Rheaume, that admission could not form the basis of a sanction consistent

---

[2]   To whatever extent the Vermont state courts, either explicitly or implicitly, treated Rheaume's ineffective assistance claim as a matter of state constitutional law, there is little consequence here. "Vermont uses a two-part standard for evaluating an ineffective assistance of counsel claim—a test that is essentially equivalent under the United States and Vermont constitutions." *In re Combs*, 2011 VT 75, ¶ 9, 27 A.3d 318 (mem.).

with DOC policy because the test administered on that date was for treatment purposes only.  For this argument, Rheaume cites DOC Directive 409.04 § 4.6.1, which at the time read: "Results of treatment test[s] are used only for treatment purposes and not for disciplinary or criminal sanctions."[3]  (Doc. 4 at 23.)  This Directive, however, has no relevance to the admissibility of Rheaume's July admission to marijuana use.

For one, Brouillette specifically testified that this policy, in her view, does not apply to probationers, such as Rheaume.  (Doc. 3-22 at 15-17.)  More importantly, the DOC Directive is irrelevant because Rheaume did not test positive on July 17, 2007.  He admitted to drug use.  So, even if the DOC Directive applied to probationers, the policy's prohibition on the use of the "[r]esults of treatment tests" for sanction would be inapplicable because those results were obviously not used in support of the sanction seeing as how they were, if anything, exculpatory.  The basis of the sanction, among other factors, was his admission to marijuana use, not the test result.  Furthermore, counsel actually raised this theory during the probation-revocation hearing in arguing that the court should not revoke Rheaume's probation: "The testimony was uncontroverted that it was a treatment test . . . . they, in fact, treated it as a positive test . . . . [which] is against DOC policy."  (*Id*. at 32.)  Having made this argument, counsel's decision not to directly challenge the admissibility of Brouillette's testimony is of no moment, given the ultimate irrelevance of the policy to Rheaume's admission to marijuana use.  *See Duncan*

---

[3]  This language appears to have been moved, and is now located at DOC Directive 409.04 § 1(c)(i).  *See* Vermont Agency of Human Services, Department of Corrections, Policies and Directives, IV. Correctional Services, DOC Directive 409.04 – "Inmate/Offender Drug Testing" (effective June 24, 2009), *available at* http://doc.vermont.gov/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/409-04-inmate-offender-drug-testing.

*v. Griener*, No. 97 Civ. 8754(JGK), 1999 WL 20890, at *10 (S.D.N.Y. Jan. 19, 1999)

(because counsel's objection would have been fruitless, "the failure to so object is not

evidence of ineffective assistance of counsel").  Thus, despite defense counsel's efforts to

push this theory during the revocation hearing, the DOC policy did not limit the

admissibility of this portion of Brouillette's testimony.  Rheaume's argument to the

contrary, which furnishes the premise for his first claim of ineffective assistance, is

without merit.

Next, Rheaume contends that counsel was ineffective for failing to challenge the

admission of the August 10, 2007 drug test results, as that test was not supported by

reasonable suspicion nor approved by a supervisor.  In support of this argument,

Rheaume cites DOC Directive 409.04 § 4.5.4.1, which provides: "Requests for drug

testing based on 'reasonable suspicion' may be initiated by any Correctional Officer,

Community Correctional Officer, Caseworker, or Probation Officer (PO) and *must be*

*approved by* a Correctional Facility Shift Supervisor, Casework Supervisor, Corrections

Living Unit Supervisor, Security and Operations Supervisor, or manager."[4]  (Doc. 4 at

24.)  Again, there was no error by counsel.  Defense counsel pressed this "supervisor

approval" argument during cross-examination of Brouillette, at which point she testified

that she was herself a supervisory official and thus needed no further approval for a

suspicion-based drug test of Rheaume.  (Doc. 3-22 at 29.)  Rheaume offered no testimony

---

[4]  This language also appears to have been moved, and is now located at DOC Directive 409.04
§ 1(b).  *See* Vermont Agency of Human Services, Department of Corrections, Policies and Directives, IV.
Correctional Services, DOC Directive 409.04 – "Inmate/Offender Drug Testing" (effective June 24,
2009), *available at* http://doc.vermont.gov/about/policies/rpd/correctional-services-301-550/401-500-
programs-security-and-supervision/409-04-inmate-offender-drug-testing.

to the contrary.  Given the state of the evidence at the hearing, defense counsel did not err in failing to object to the admission of the August drug test results on this basis.

As for whether the test was supported by reasonable suspicion, there is no question that the test was justified given Rheaume's prior admission to marijuana use and past relapses.  Obviously, an individual's admission to drug use provides a basis for reasonable suspicion to support a subsequent drug test.  "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."  *United States v. Knights*, 534 U.S. 112, 121 (2001).  As the drug test at issue was both "supported by reasonable suspicion and authorized by a condition of probation," it met the requirements of the Fourth Amendment.  *Id*. at 122.  Any argument to the contrary would have been without merit, and counsel's failure to raise the issue did not constitute ineffective assistance.[5]

Rheaume next alleges that his counsel was ineffective for failing to object to portions of Brouillette's testimony concerning his missed appointments with Porter.  According to Rheaume, attendance at his sessions with Porter was not a mandatory

---

[5]  In his Motion for Summary Judgment, Rheaume adds a related claim that Brouillette failed to comply with DOC policy by not submitting a statement of reasons for the August drug test prior to its administration.  (Doc. 4 at 24.)  In its most recent order, the Vermont Supreme Court declined to address this same argument because it had not been raised in the trial court, and was thus "unpreserved."  *In re Rheaume*, No. 2012-354, slip op. at 4 (Vt. Apr. 18, 2013).  As such, this claim is unexhausted.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (Section 2254's exhaustion requirement is not met "where the claim has been presented [in state court] for the first and only time in a procedural context in which its merits will not be considered"); *see also Bell v. Cone*, 543 U.S. 447, 452 n.3 (2005) ("[T]he burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits.").  Because this claim has not been properly exhausted, it will not be addressed here in the first instance.

condition of his probation, and thus he could not have been sanctioned for failing to attend those voluntary counseling appointments.  This argument, of course, directly conflicts with Brouillette's testimony at the probation-revocation hearing—testimony that Rheaume later alleges is perjurious, *see infra*—in which she clarified that she ordered Rheaume to attend counseling with Porter as part of his probation.  (Doc. 3-22 at 12.) Defense counsel pressed Brouillette on this point during cross-examination, questioning her on the manner in which she had notified Rheaume of this probation condition.  (*Id*. at 22.)  In his Petition, Rheaume fails to explain what else counsel could have done to cast doubt on Brouillette's testimony.  "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature."  *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).  Such issues that "fall squarely within the ambit of trial strategy . . . will not constitute a basis for an ineffective assistance claim." *Id*.

Finally, Rheaume brings his claim full circle, reasserting many of the arguments raised above in arguing that counsel was ineffective for failing to challenge Brouillette's perjured testimony.  Specifically, Rheaume insists that the following of Brouillette's allegations are false: (1) that the DOC Directive on drug testing did not apply to Rheaume as a probationer; (2) that Brouillette did not need supervisory approval to conduct the August drug test; and (3) that Rheaume's counseling with Porter was a condition of his probation.  (Doc. 4 at 30-31.)  This claim, like those it subsumes, is without merit.  Most critically, Rheaume fails to tie his allegation of Brouillette's perjury to something that his attorney could have done better.  Rheaume's vague contention that

counsel was ineffective for "failing to object to the false contents" of her testimony falls

far short of *Strickland*'s high bar.  "Broad, generalized claims of an attorney's failure to

pursue a defense are insufficient to sustain a claim of ineffective assistance of counsel

under the first prong of the *Strickland* test."  *St. Jean v. United States*, No. 06-CR-414,

2008 WL 4415170, at *2 (N.D.N.Y. Sept. 23, 2008) (collecting cases).  Regardless,

matters of trial strategy or tactics, such as the scope of cross-examination, cannot support

a claim of ineffective assistance.  *See United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.

1992) (no ineffective assistance despite defendant's claim that lawyer had failed to

thoroughly impeach prosecution witnesses because decisions as to nature and extent of

cross-examination are strategic).

Although such strategic considerations are beyond assessment under *Strickland*, it

bears reiteration that defense counsel was quite thorough in his cross-examination of

Brouillette, addressing each claimed piece of false testimony with her in detail.  As to the

scope of DOC policy, counsel confronted her with the statement in the relevant directive

that it applied to both "offenders incarcerated" as well as those "under supervision" of the

Vermont DOC, presumably including probationers.  (Doc. 3-22 at 16.)  Similarly,

defense counsel confronted Brouillette with the DOC policy requiring supervisory

approval of suspicion-based drug testing.  (*Id*. at 29.)  Finally, as to whether the sessions

with Porter were included among Rheaume's conditions of probation, counsel got

Brouillette to admit that she had advised him of this condition on a "yellow sticky note"

and that it would have been a "better practice" to provide more formal notice.  (*Id*. at 22.)

As such, counsel aggressively challenged each alleged falsehood now raised by

Rheaume, and Rheaume does not provide any examples of what more counsel could have done.

In summary, Rheaume has not only failed to meet the doubly-deferential standard of AEDPA and *Strickland*, but he has also failed to allege a single meritorious argument that counsel could have pursued in his defense.  As such, his claim of ineffective assistance of counsel is without merit.  "The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled."  *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quoting *Jameson v. Coughlin*, 22 F.3d 427, 429-30 (2d Cir. 1994)).

<u>Conclusion</u>

For the reasons stated above, I recommend that Rheaume's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be DENIED, his Motion for Summary Judgment (Doc. 4) be DENIED, and Respondent's Motion to Dismiss (Doc. 6) be GRANTED.

Dated at Burlington, in the District of Vermont, this 17th day of September, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).